# Pyle's Appeal.

1. A testator in his will made the following provision,—"Upon the marriage or death of Mary, (my wife), whichever may happen first, then my will is that my executors, as soon after as can conveniently be done by them, are to sell and dispose of all my real and personal estate as follows: First, If my sons, Friend Pyle and Atwood Pyle, or either of them, have a wish to have my real estate (which is in two parcels, or tracts of land), it may be appraised to them . . . then after the whole amount, or value of my real and personal estate is found by sale, or valuation or both (as the case may be). Then my will is . . . ." &c. *Held*, that the will worked a conversion of the real estate into personalty.

2. The testator then devised and bequeathed the rest and residue of his estate to his children as follows ; "The rest and residue of my estate I give and bequeath unto, and among all my children, . . . to be equally parted and divided among them, share and share alike, and my will is, that in case any of my children shall depart this life before such time as the portion of him, her or them so dying shall become payable, which shall be at their several respective ages of twenty-one year, then and in

such case the portion of him, her or them, so dying, shall go and be equally divided among the survivors or survivor of them, share and share alike.   Unless they so dying shall leave lawful issue, who in such case shall have parents, portion, provided they, (the issue) shall live to be twenty-one years of age ". . . . . One of the testator's daughters, having attained majority, died married but without issue, before his widow:

*Held*, that under the provisions of the will the title to her distributive share vested in the daughter, upon her attaining her majority, as personal property, and that her administrator was entitled to the same.

February 8th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Delaware county :* Of July Term 1882, No. 94.

Appeal of Friend Pyle, executor of the last will and testament of Reece Pyle, deceased, from a decree of said court, making distribution of the personal estate of said decedent, and of the proceeds of his realty.

Before the Auditor appointed to make such distribution, the following facts appeared : Reece Pyle, a resident of Delaware county, died February 4th 1860, possessed of two tracts of land and certain personalty, and left surviving him his widow Mary Pyle and five children, Friend, Atwood, Cynetta, wife of George Cobourn, Mary, wife of R. S. Bullock, and Anna M., wife of James M. Smith.

In his will bearing date March 6th 1849, the testator, after providing for the payment of his debts, continued as follows : " I give and bequeath unto my loving wife, Mary Pyle, the use and profits of all the residue of my estate, real, personal and mixed, so long as she shall remain my widow, unmarried and single, and upon the marriage or death of Mary (my wife), whichever may happen first, then my will is that my executors, as soon after as can conveniently be done by them, are to sell and dispose of all my real and personal estate as follows, first, if my sons, Friend Pyle and Atwood Pyle, or either of them, have a wish to have my real estate (which is in two parcels, or tracts of land) it may be appraised to them . . . . . each farm separately, putting a fair valuation on each, and after such valuation, my son, Friend Pyle, to have his choice of the farms, then after the whole amount, or value of my real and personal estate is found by sale, or valuation, or both (as the case may be), then my will is: To wit: . . . . . I give and bequeath unto my son, Atwood Pyle, $500, all the rest and residue of my estate I give and bequeath unto, and among all my children . . . . . . . . to be equally parted and divided among them, share and share alike, and my will is, that in case any of my children shall depart this life before such time as the portion of him, her or them so dying shall become payable, which shall

be at their several respective ages of twenty-one years. Then in such case the portion of him, her or them, so dying, shall go and be equally divided among the survivors or survivor of them, share and share alike. Unless they so dying shall leave lawful issue, who in such case shall have the parents' portion, provided they (the issue) shall live to be twenty-one years of age, . . . And lastly, I constitute and appoint my said wife and my son, Friend Pyle, to be executors to this my last will and testament."

One of the testator's children, Anna M. Smith, died June 27th 1862, twenty-six years of age, intestate, leaving a husband James M. Smith, but no children. Mary Pyle, the widow, died November 3rd 1872. In 1873, by the advice of counsel, the estate, both real and personal, was divided as follows: The real estate was appraised according to the terms of the will, and taken by the two sons, one parcel by Friend at $5,000; the other by Atwood at $5,300. These amounts, together with the value of the personalty, were divided into four equal shares, and distributed among the four children then living. James M. Smith was not notified of this settlement, and made no claim for any part of the estate at this time.

Six years afterwards, Smith took out letters of administration on his wife's estate, and presented a petition to the Orphans' Court, setting out the foregoing facts, and averring that he was entitled, in right of his wife, to one-fifth of testator's estate. The Auditor to whom this claim was referred reported in favor of the petitioner, and awarded him one-fifth of the personal property, on the ground that, under the will, his wife's interest in her father's estate, vested in her absolutely upon her arriving at the age of twenty-one years, and was not contingent on her surviving her mother; and also one-fifth of the proceeds of the real estate, holding that the will worked an equitable conversion thereof into personalty.

Exceptions filed to this report were dismissed by the court; CLAYTON, P. J., delivering the opinion, and a decree was entered accordingly, whereupon Friend Pyle as executor took this appeal assigning for error the decree of the court.

*H. C. Howard* and *J. M. Broomall*, for appellant.—The court below, by its construction, in effect makes a new will. The testator used the word "payable," not "vested;" and he indicated the time when the shares should be paid by directing them to be raised after the widow's death or marriage. The will contemplated the vesting of the shares at the widow's death subject to the further contingency of being defeated by the child dying under age without issue, or perhaps they were absolutely vested at the widow's death: Williams *v.* Tartt, 33 E.

C. L. R. 85; Bowman's Appeal, 10 Cas. 19; Williams *v.* Williams, 6 Ch. Ap. Cas. 782; Watson's Trusts, 10 Eq. Cas. 36; Wilmot's Trusts, 7 L. R. Eq. Cas. 532; Spencer *v.* Bullock, 2 Ves. Jr. 687; Whatford *v.* Moore, 14 E. C. R. 270; Crowder *v.* Stone, 3 E. C. L. R. 217; Bielefield *v.* Record, 2 E. C. L. R. 453. The will did not work an equitable conversion, because it did not give an imperative direction to sell irrespective of all contingencies: Anewalt's Appeal, 6 Wr. 414; Neely *v.* Grantham, 8 P. F. S. 433; Laird's Appeal, 4 Norris 339; Jones *v.* Caldwell, 1 Out. 42.

*Edward A. Price*, for appellee.—The law favors vesting at the earliest possible period, and in this case it is required by the clause in the testator's will which says " the portion of the children . . . . shall become payable . . . . at their several respective ages of twenty one years." Payable here must be construed to mean vested: Halifax *v.* Wilson, 16 Ves. 168; Emporer *v.* Rolfe, 1 Vesey Sr. 208; Mocatta *v.* Lindo, 9 Simons 56; Jones *v.* Jones, 13 Simons 561; Salisbury *v.* Lambe, 1 Eden 465; Mendham *v.* Williams, 2 L. R. Eq. Cases 397; West *v.* Miller, 6 Eq. L. R. Cases 59; Haydon *v.* Rose, 10 Equity Cases 224; Williams on Executors * 1146; Walker *v.* Main, 1; Jacob & Walker 1, 8; In re Yates' Trust, 16 Jurist 78; Hope *v.* Lord Clifden, 6 Vesey Jr. 499; Butterworth *v.* Harvey, 9 Beavan 130; Hayward *v.* James, 28 Beavan 523; Patterson *v.* Hawthorn, 12 S. & R. 112; Letchworth's Appeal, 6 Cas. 175; McClure's Appeal, 22 Sm. 414; Laird's Appeal, 4 Norris 339.

The testator says, "my executors are to sell and dispose of all my real and personal estate."

The rule is well settled, that where there is an absolute and imperative direction that land shall be sold, and turned into money, or money be employed in the purchase of land, the money is considered in equity in all respects as converted into land, or the land into money, as the case may be: Morrow *v.* Brenizer, 2 Rawle 185; Burr *v.* Sim, 1 Wharton 252; Willing *v.* Peters, 7 Barr 289; Parkinson's Appeal, 8 Casey 455; Anewalt's Appeal, 6 Wright 414; Chew *v.* Nicklin, 9 Wright 87; Brolasky *v.* Gally's Ex'rs, 1 P. F. S. 512; McClure's Appeal, 22 P. F. S. 414; Laird's Appeal, 4 Norris 339.

Mr. Justice GORDON delivered the opinion of the court, February 26th 1883.

Where a testator, by his last will and testament, directed as follows: "It is my will that after the death of my beloved wife, Mary, all my estate be appraised and sold as soon as it can be done with advantage; and if any of my sons think proper to take the farm on which I now live, at the appraisement, he shall have the privilege of doing so on paying the other heirs

[Pyle's Appeal.]

their respective shares; and it is my will that all the money arising from the sale of my real estate be equally divided among my children, share and share alike," it was held that this was a conversion of the realty into personalty, which took effect at the death of the testator, and that the provision that any of his sons might, at his option, take the farm at the appraisement, did not change the effect of the direction to sell, since, as was said by Mr. Justice MERCUR, who delivered the opinion of the court, " whether or not a son acquired it, it was nevertheless a sale, and the one taking it became a purchaser." Laird's Appeal, 4 Nor. 339.

The provisions above stated, are in effect, identical with those found in the will of Reece Pyle. He directs that after the death, or marriage, of his wife, Mary, his executors shall sell and dispose of all his real and personal estate, giving to his sons, Friend Pyle and Atwood Pyle, or either of them, the option of taking the realty at the appraisement, for which he particularly provides; in other words, they are to be preferred as purchasers. That this provision worked a conversion of the real estate into personalty, is, as we have above shown, decided, hence, we need pursue this branch of the case no further.

Were it not for the devise over, in case any of the devisees died before reaching the age of twenty-one years and without lawful issue, the legacies must be taken as vested, and that payment of them was deferred to the time mentioned, and until the marriage, or death, of the widow, would make no difference : McClure's Appeal, 22 P. F. S: 414. These legacies, therefore, depended solely upon the contingencies mentioned and none other, that is, the dying of the donee or donees, before twenty-one and without issue. As, however, Mrs. Anna M. Smith lived beyond the period indicated, the bequest to her, at the time of her death, had become absolute, and so was properly awarded to her administrator, James M. Smith : Scott v. Price, 2 S. & R. 59.

The appeal is dismissed at the costs of the appellant, and the decree of the Orphans' Court is affirmed.