## Everts' Estate

*John P. Sipes*, for petitioner.
*Wingerd & Long*, for respondents.

SHEELY, P. J., May 13, 1943.—This matter is before the court upon petition of A. Earl Everts for the partition of certain real estate of decedent. The answer of Samuel A. Everts thereto raises the sole question, whether the terms of testator's will effected an equitable conversion of his real estate. There are no facts in dispute.

By his will testator gave his real estate, the household goods, chickens, and one heifer to his wife for life. There were two specific bequests—one conditioned upon the payment of $145 to the estate—and he then directed that "all money I now have after payment of expenses be equally divided among my children. . . ." After the death of his wife he willed and directed that his real estate "is to go to my son A. W. Everts, if he desires to take said real estate at the sum of $4000. If he cannot or will not pay the sum aforesaid then the next youngest child shall have the above privilege, and so on up to the oldest." He then directed that his wife's doctor bills and funeral expenses should be paid "out of the estate"

and that "after her funeral expenses are paid the money remaining shall be equally divided among all my children. . . ."

A conversion will never be enforced in doubtful cases, for it is a fiction invented to sustain and carry out the intention of the testator or settler, never to defeat it. The law does not favor a conversion: Schoen's Estate, 274 Pa. 28; Loew's Estate, 291 Pa. 22. Therefore the presumption is always against conversion, and even where it is required it must be kept within the limits of absolute necessity: Sauerbier's Estate, 202 Pa. 187. If testator's intention is not expressly stated it must be deduced from the whole instrument rather than from the terms of isolated provisions, which, regarded alone, may be inconsistent with testator's scheme as a whole: Marr's Estate, 240 Pa. 38.

"To work a conversion there must appear (1) a positive direction to sell, or (2) an absolute necessity to sell in order to execute the will, or (3) such blending of real with personal estate by the testator as to clearly show that he intended to create a fund from a combination of both and to bequeath that fund as money: *Hunt's* and *Lehman's Appeals*, 105 Pa. 128. These are the tests to be applied, as indicated in a long line of cases and as recently as *Suppes' Estate*, 322 Pa. 385 . . .": Shareff's Estate, 143 Pa. Superior Ct. 465, 468 (1941).

Where there is a positive direction to sell, irrespective of any contingency, and independent of any discretion, a conversion into personalty of the estate directed to be sold is worked: Cooper's Estate, 206 Pa. 628. Ordinarily, a super-added permission giving to those entitled to take, at law, the right to accept the property at an appraised value, will not change this rule of construction: Jones v. Caldwell, 97 Pa. 42; Pyle's Appeal, 102 Pa. 317; Laird's Appeal, 85 Pa. 339; Miller et al., Execs., v. Commonwealth, 111 Pa. 321. On the other hand, if the right to accept is limited to one or two of

the heirs in preference to the others, a different conclusion is reached: Neely v. Grantham, 58 Pa. 433; Lloyd's Estate, 281 Pa. 379, 387.

In Lloyd's Estate, supra, testator directed his executor to have the real estate appraised and if any two of his sons, with the consent of the third, or one with the consent of the other two, should agree to take the farms at the appraisement and pay their respective portions to the other heirs they could do so, and in case of failure to agree to take at the appraisement the executor was directed to sell the real estate and divide the proceeds. It was held that no conversion was worked, the court relying upon the decision in Neely v. Grantham, supra. In the latter case testator provided that it was his will that if any one or two of his children wished to hold the mansion property, after two of them became of age, they could do so by agreeing themselves or, if they could not agree, they could get three disinterested persons to divide and agree for them; the eldest to have the first choice, and each child's share to remain in the property until he arrived at 21 years of age. He further provided that if none of the children purchased the property it must be sold to the best advantage for the use of the children. It was held that this did not effect a conversion. In the opinion of Mr. Chief Justice Thompson, at page 437, it was said that equitable conversion of realty into personalty, by force of a direction in a deed or will to sell, takes place only where the direction is positive and absolute, but if the proposed sale is contingent, or eventual, equitable conversion does not follow.

"Nor will it follow even from an inevitable necessity to sell, in order to administer some provision of the will. . . . It is very evident that no sale by the executors was intended, if the children should agree to hold the land as provided for in the will. It is expressly contingent on this, whether there was to be a sale or not.

It is therefore clearly, according to the authorities cited, not a case of equitable conversion by will."

In the present case there is no express direction to sell the real estate, and the conversion, if any, must be found in an absolute necessity to sell in order to execute the will, or in the blending of real with personal estate by the testator so as clearly to show that he intended to create a fund from a combination of both and to bequeath that fund as money. This is merely another method of determining his intention that the realty should be converted into personalty, as it is his intention which governs: Marr's Estate, 240 Pa. 38.

It is apparent that testator intended one of his children to take the real estate under the will, and that this would result in the creation of a fund of $4,000, out of which the wife's doctor bills and funeral expenses could be paid and the balance divided among the children. If this had occurred the child would have taken the farm under the will and there would have been no conversion: Weiler's Estate, 169 Pa. 66. The necessity to sell arises solely because of the failure of the children to take the real estate at the appraisement, and was contingent upon that failure. The situation, then, is not different from that presented in Neely v. Grantham, supra, and Lloyd's Estate, supra, where there was an express direction to sell in the event that the children did not accept the real estate. There is less reason to conclude that testator intended a conversion where the intent must be inferred from a necessity to sell or from blending than where there is an express direction to sell. As in Yerkes v. Yerkes, 200 Pa. 419, 423:

"The testator in the present case clearly did not contemplate any change in the nature of his property, except in certain events, which were future and contingent."

We think this case is governed by Neely v. Grantham, and Lloyd's Estate, supra, and that the will did not effect a conversion of the real estate. The real estate

remains real estate at the present time and the petition for partition was properly presented: Boshart v. Evans, 5 Wharton, 549, 561. The status of the direction to pay the wife's doctor bills and funeral expenses need not now be determined, but is probably governed by Burt et al. v. Herron's Executors, 66 Pa. 400, and section 17 of the Wills Act of June 7, 1917, P. L. 403.

And now, May 13, 1943, due proof of the service of the citation having been made, the citation is made absolute, and an inquest to make partition of the real estate of John Everts, deceased, among the parties in accordance with their respective interests is awarded, return of the proceeding to be made to the court. Service of the inquest to be made upon nonresidents of Pennsylvania by registered mail.