## IV.

 ## V.

Bruce McClelland, Oklahoma City, Okl., for plaintiff.

Robert E. Shelton, U. S. Atty., Oklahoma City, Okl. (Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and A. Barr Comstock, Sp. Assts. to Atty. Gen., on brief), for defendant.

VAUGHT, Chief Judge.

The plaintiff seeks to recover the sum of $3283.42, with interest from March 15, 1942, for income taxes which she claims were illegally and wrongfully assessed and collected for the taxable year 1941. The defendant denies liability. The proper procedure to recover has been complied with by the plaintiff and a stipulation of facts has been entered into between the parties, setting out the facts as follows.

Emily Culbertson died April 12, 1941, leaving three children, the plaintiff being one of the three. At the time of her death Emily Culbertson resided in the state of Texas, and left a will which provided in part as follows:

"First. I direct that all of my debts be paid before any disposition is made of my estate.

"Second. I will, devise and bequeath all of the property and estate of which I die

**WHITTINGTON v. JONES.**

Civ. No. 4721.

United States District Court
W. D. Oklahoma.

April 27, 1951.

seized or possessed, real, personal or mixed, wheresoever situate and from whatsoever source obtained, to my children, John J. Culbertson, Emily Culbertson Potter, and Florence Culbertson Whittington, share and share alike, absolutely and in fee simple. * * *"

Among the assets of the estate were certain German bonds of the aggregate par value of $122,075 and the aggregate appraised value, as of the date of the death of testator, of $19,382.50. These bonds were divided among the three legatees by agreement on or about April 30, 1944, the plaintiff receiving as her share, bonds of the aggregate appraised value as of the date of the death of testator of $6426.50. Under the provisions of section 127 of the Internal Revenue Code, as amended, 26 U.S.C.A. § 127, said bonds became a war loss in the calendar year 1941, war with Germany having been declared by the United States on December 11, 1941. The amount of the war loss was not deducted from the income of the plaintiff for the year 1941 in computing her income taxes for that year, or by the internal revenue agent who, under date of August 14, 1942, audited plaintiff's income tax returns for the years 1938 to 1941, inclusive, and determined an additional tax liability of $7128.92 for the year 1941. As finally determined by the revenue agent and agreed to by the executrix of the estate, the gross estate was valued at $353,-767.40, the amount of debts, administration expenses and other deductions was $21,-569.59, and the federal estate tax was $44,467.05. The estate tax paid the state of Texas was $4614.97, and the estate tax paid the Dominion of Canada was $886.66. The 1941 fiduciary income tax return filed for the estate indicated a net income of $2573.41 and a tax of $182.34, which was paid in 1942. The Commissioner of Internal Revenue in 1944 added $5489.39 to the income of the estate for said year and allowed an additional deduction for war loss on the German bonds in the amount of $19,382.50.

The question presented here is stated in the brief of the defendant as follows: "Property owned by the decedent at the time of her death admittedly became worthless during the period of the administration of her estate. Under the applicable Texas statute all of her estate vested in the legatees, these taxpayers, immediately upon her death but was held by the executrix for the payment of debts. The question is whether the loss was deductible by the legatees, as they contend, or by the estate under Internal Revenue Code, Section 161 et seq. [26 U.S.C.A. § 161 et seq.], as claimed by the Collector."

■ This question must be determined under the law of the state of Texas and the provisions of the will of the testator.

The law of the state of Texas governing this situation, Article 3314, 9 Vernon's Civil Statutes, Ann., reads as follows: "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject however, to the payment of the debts of the testator or intestate, except such as may be exempted by law; and, whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, but with the exceptions aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate; but upon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with law."

This statute is plain, unambiguous and leaves little, if anything, for interpretation. Much of the law and citations presented by the briefs of the parties does not apply to the issues here.

As was stated in Anderson, Collector, v. Wilson, 289 U.S. 20, 24, 53 S.Ct. 417, 419, 77 L.Ed. 1004, by Mr. Justice Cardozo, where a similar question was under consideration: "To determine whether the

loss was one suffered by the trust estate, or one suffered by the taxpayer to whom the proceeds of the sale were payable, there is need at the outset to determine the meaning of the will. The government contends, and so the courts below have held, that title to the realty was given to the executors upon a valid trust to sell and to apply the rents and profits in the interval. The representatives of the taxpayer contend that the executors had no title, but only a power in trust, and that, subject to the execution of that power, the taxpayer was owner. If that be so, the loss was his and no one else's. A mere donee of a power is not the owner of an estate, nor to be classed as a juristic entity to which a loss can be attributed. * * *"

When the provisions of the will in the instant case are compared with the facts in the Anderson Case, supra, there appears to be little room for argument.

In the summary of argument in the defendant's brief counsel falls into error when stating:

"The applicable federal taxing statute by its specific terms imposes the same taxes as apply to individuals on the income of estates and on any kind of property *held in trust* by an executor during the period of administration, the taxable income being determined by deducting from the gross income certain specified items including losses of the nature of the war loss here involved.

"We are here concerned exclusively with property of an estate *held in trust* by the executrix under Texas law, *to be administered by her under that law,* and with the net income of that property, to be determined and taxed under the applicable federal statute." (Emphasis supplied.)

The distinction in the cases cited is easily drawn. In the cases relied upon to substantiate that doctrine, the facts show that the wills created a distinct trust which lodged the title to the property in the trustee for the purposes of the trust involved. In the case at bar there is no such trust. The will here provides that the property in the estate is devised and bequeathed to the three legatees "share and share alike, absolutely and in fee simple." There is the provision in the will that all debts must be paid "before any disposition is made." The stipulation discloses that the estate was amply solvent so that the debts of the estate are immaterial here. The statute of Texas provides that the property "shall vest immediately in the devisees or legatees; * * * subject however, to the payment of the debts of the testator". The law further provides that the executor "shall have the right to the possession of the estate as it existed at the death of the testator" and "shall recover possession of and hold such estate in trust". In trust for what purpose? The statute says "to be disposed of in accordance with law." What law? The law that pertains to the disposal of the property in compliance with the terms of the will. There is no trust estate provided in the terms of this will. The executor is merely to hold possession, not the title, until the debts of the testator are paid, and is then to distribute the estate as the law of the state of Texas provides. The state of Texas and other courts have long since settled the proposition of when and in whom the title vests in situations of this character.

In 1899 in Blinn v. McDonald, 92 Tex. 604, 50 S.W. 931, the court quoted from Ansley v. Baker, 14 Tex. 607, as follows: "'* * * it is extremely doubtful whether the mere fact of taking possession of an estate by an heir would, under our statute, be permitted to convert him into an executor de son tort, and subject him to liabilities as such. The statute declares, in effect, that the estate shall immediately on the death vest in the heirs, testate or intestate, as the case may be. To take possession of property vested by operation of law cannot be unlawful, nor can it create liabilities not specially attached to the act by law. At common law, the estate in the personal goods was in abeyance until the grant of administration; but by the statute the whole estate vests immediately in the heirs, subject to the payment of

debts as declared by statute. But it is not provided that the heirs, as such, can be compelled to discharge those debts, nor are they authorized to employ the estate for such purpose; * * *. Possession, then, by an heir, does not subject him to liability. He holds the property with the incumbrance, but he cannot be required to relieve the estate of the burden.'"

In a later case, Smith v. Patton, Tex. Com.App., 1922, 241 S.W. 109, 117, the court said: "We take occasion to say that the rules laid down in Blinn v. McDonald seem to us to be sound and just. Creditors of an estate should follow the property first, and when it has passed into the hands of innocent purchasers, under sale from the legatees, then the latter should be held personally liable to the extent of its value. It seems to us that no one should complain because of these rules. *They are the law in Texas, for that decision of our Supreme Court has never been modified or overruled. * * *"* (Emphasis supplied.)

The opinion in Meadows v. Russell, Tex. Civ.App., 1947, 203 S.W.2d 647, 648, is squarely in point here. The court held: "At the time of the death of a testator or testatrix title to the estate devised immediately vests in the devisees or legatees, and any portion of the estate not passing under the will vests immediately in the heirs at law of the testator or testatrix. R.C.S. of Texas 1925, Art. 3314. Under this statute and under the precedents of this state *title to the property passing under a will vests in the beneficiaries under such will immediately upon the death of the maker of the will, and not in the executor.* (Citing authorities.) * * *." (Emphasis supplied.)

What effect do state statutes have in determining federal income taxes under the federal code? The question is thoroughly settled under the authorities cited. Quoting from Trapp v. United States, 10 Cir., 1949, 177 F.2d 1, 5: "* * * Legal rights and interests are created by state·law. The federal revenue acts merely determine when and how rights and in-

terests created in that manner shall be taxed. (Citing numerous authorities.) The question whether the income derived from the oil and gas produced from these leases was separate or community income must be determined by the law of Texas, even though the taxpayer was a resident of Oklahoma. (Citing authorities.)"

The case of Arrott v. Heiner, Former Collector etc., 3 Cir., 1937, 92 F.2d 773, is squarely in point. That court held:

"The question in issue is whether or not the legal title to this property was held in trust during the taxable years. If it was, then the deficiency was properly assessed and collected, but, if it was not, the plaintiff as the owner in fee of one-twelfth of the real estate, and not the trustees, is entitled to these deductions and should recover, for the allowance of the deductions is not in question. The only question is the person to whom they should be allowed.

\* \* \* \* \* \*

"Since the testator was a citizen of Pennsylvania, and the property in question is situated therein, both the validity and the legal effect of the will is to be determined by the laws of that state.

\* \* \* \* \* \*

"If there is no positive direction to sell, until there is an actual necessity to sell, 'the heir and the residuary legatee as well, is entitled to the possession, as an incident to title,' and the executor who holds possession or who collects the rents, issues, and profits, acts as the agent of such heir or residuary legatee. * * *

\* \* \* \* \* \*

"The provision giving the executors the 'management and control of said estate, in trust, * * *' does not create a trust of the real estate or vest the legal title to it in the executors. * * * A 'trustee' to collect the rents for the decedent's family is a mere agent in whom no title is vested. * * * 'A careful reading of this will leads us to the conclusion that the power of sale was given for the purpose of conservation of his estate, that it was not the intention of the testator to

dispose of his estate as money, and that the authority to sell given to his executors was at most simply a means that might be employed to produce equal division, and was not an object to be obtained.' In re Marr's Estate, supra [240 Pa. 38, 87 A. 621].

"All of these considerations lead us to the conclusion that the legal title to the real estate was not vested in the executors as trustees but that it was vested in the residuary legatees. The Board of Tax Appeals, in the cases of James W. Arrott v. Commissioner, Charles F. Arrott v. Commissioner, Albert E. Arrott v. Commissioner, 23 B.T.A. 478, following this same line of reasoning, reached this same conclusion and found that the brothers of the plaintiff's husband were entitled to these same deductions.

\* \* \* \* \* \*

"The case of Anderson v. Wilson, 289 U.S. 20, 53 S.Ct. 417, 77 L.Ed. 1004, upon which the District Court relied, is not controlling in the present case, for, though the facts are very similar, the decision in that case depended upon the law of New York, but the decision in this case depends upon the law of Pennsylvania, which we think requires a reversal of the order of the District Court."

Authorities to the same effect are multiple but the court is of the opinion that practically every question presented here is fully answered by the authorities quoted.

The legal title to the interest of the plaintiff in the bonds, by the terms of the will and the statutes and decisions of the state of Texas, vested immediately upon the death of the testator in this plaintiff. The loss occurred to that interest during the taxable year 1941 and was her loss alone. She was entitled to use it as a deduction, and under the stipulation of facts and the applicable law, she is entitled to a judgment for the sum of $3283.42, with interest according to law.

Findings of fact, conclusions of law and a form of judgment, in compliance with this opinion, may be submitted within fifteen days from this date.